Mr. Chief Justice ShaRKEy
delivered the opinion of the court.
This is an appeal from the superior court of chancery, in which the bill was filed by Montgomery, under the following circumstances. Previous to the 2d of November, 1839, he had become bound, with others, as surety for McGimpsey for a very large amount of money due to various persons, all of whom are made defendants. On that day McGimpsey executed to him a' mortgage on about eighteen hundred acres of land, as an indemnity against his several liabilities. The bill charges that Dick, McClean, Booker, and Hill, pretend to claim title to the land; which, if they have any, was acquired by virtue of some lien posterior in point of time to his mortgage. None of these debts had been paid when the original bill was filed; but an amended or supplemental bill was filed after several of the debts were paid. *566 The prayer is, that the incumbrances may be declared inoperative, and for a foreclosure.
None of the defendants answered, except Dick and Hill, who claim title to the land as purchasers at execution sale,-under a judgment older than the mortgage. The answer, with the exhibits, discloses this state of facts: On the 1st day of May, 1838, James H. Scott recovered a judgment against McGimpsey in the circuit court of Madison county, for $4000 debt, and $103 11 damages. An execution issued, and was placed in the hands of the sheriff, who was stopped from proceeding by an injunction from the superior court of chancery. The injunction was dissolved, and another execution issued, when the defendant McGimpsey sued out writs of error and supersedeas, and the case was brought to this court, when, at January term, 1840, the judgment of the circuit court of Madison county was affirmed, and judgment entered against the principal and his sureties for the amount of the judgment of the circuit court, ($4103 11) and ten percent, damages. This was certified by the clerk of this court to the clerk of the circuit court of Madison county, who issued an execution against the principal and sureties, which recites that the judgment of this court was rendered in affirmance of the judgment of the circuit court of Madison county. This execution was levied by the sheriff on four thousand nine hundred acres of land, which was particularly described by numbers according to the surveys, without specifying to whom it belonged. Then follows a general return of the sheriff, that by virtue of the writ he had caused to be made of the lands of McGimpsey the plaintiff’s money in full and costs. The land claimed under the mortgage was embraced in the levy.
It requires but a few remarks in addition to this history of the case to decide it. The judgment was older than the mortgage, and was of course the first entitled to satisfaction. The lien of the original judgment was not destroyed by the judgment of affirmance rendered by this court. The only question is, does the execution issued on the certificate of affirmance from this court so connect itself with the original judgment as *567 to show the identity of the judgment affirmed with the judgment rendered in the circuit court on the 1st of May, 1838. The records are made exhibits to the answer, and from them it is plain that the execution under which the land was sold'was issued on the original judgment, in the manner prescribed by the statute. When the whole case is looked into, the foundation of the execution is at once seen.
But it is objected that the damages rendered by this court did not constitute a lien which was entitled to priority over the complainant’s mortgage. This may be true, but still that would not alter the case. The land was sold under a lien which was older than the mortgage, to wit, the original judgment, and of course, in the face of that sale, the chancellor could not have decreed a foreclosure. If the land sold for the amount of the original judgment and damages, the most that the complainant could claim would be the amount of the damages as a sum not covered by the older lien, but subject to his mortgage, as a surplus produced by the incumbered property over and above the amount of the preferred incumbrance. But there is a conclusive answer to this; there were four thousand nine hundred acres of land sold, when complainant had a lien on only eighteen hundred acres; he cannot therefore say that the mortgaged premises sold for more than enough to satisfy the judgment lien. But even if he were entitled to a surplus, who is liable for it? Surely not the purchaser. The judgment-creditor should be called on to refund, but he is not a party to the bill.
The decree of the chancellor is affirmed.